IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 5:11-CR-00149-BR-1
NO. 5:13-CV-00115-BR

| | |
|---|---|
| ROBERTO PABLO GUTIERREZ, ) ) Petitioner, ) ) v. ) ) UNITED STATES OF AMERICA, ) ) Respondent. ) ) | **MEMORANDUM AND RECOMMENDATION** |

This cause comes before the Court upon petitioner Roberto Pablo Gutierrez's motion (DE 66) under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence ("motion to vacate"). The government filed a motion to dismiss (DE 69), which was granted in part and denied in part by Order dated August 22, 2013 (DE 74). The Order dismissed all but the ineffective assistance of counsel claims and also notified the parties that the government's motion to dismiss would be converted to one of summary judgment, and further directed that an evidentiary be held by the undersigned, with proposed findings of fact and recommended disposition to be filed. (*Id*). The evidentiary hearing took place as scheduled on November 15, 2013. Accordingly, the motion to vacate is ripe for adjudication. For the reasons set forth herein, the undersigned RECOMMENDS that the Court DENY Gutierrez's motion to vacate (DE 66).

I.   BACKGROUND

The facts, as set forth by Judge Britt, are as follows: On July 6, 2011, U.S. Magistrate Judge David Daniel arraigned petitioner, at which time petitioner entered a plea of not guilty to conspiracy to distribute and possess with the intent to distribute 500 grams or more of a mixture

containing a detectable amount of methamphetamine in violation of 21 U.S.C. § 846. (DEs 21, 22). In September 2011, after a jury trial, petitioner was convicted. In January 2012, the court sentenced petitioner to 292 months imprisonment. Petitioner appealed his conviction and sentence. On September 6, 2012, the Fourth Circuit Court of Appeals affirmed. (DE 62.) On February 19, 2013, petitioner timely filed pro se the instant motion. Upon initial review of the motion, the court directed the government to file an answer or other appropriate response. (DE # 67.) The government responded with the instant motion to dismiss.

On August 22, 2013, Judge Britt issued an Order dismissing petitioner's second claim, *to wit*., that the Court failed to thoroughly inquire about his dissatisfaction with counsel at the sentencing hearing. (DE 74). Judge Britt also converted the government's motion to dismiss into one for summary judgment and allowed petitioner's claims of ineffective assistance of counsel to proceed. These claims included allegations that petitioner wanted to enter a guilty plea but was prevented from doing so (Ground One) and that counsel presented with discovery on the first day of trial, preventing him from conducting a sufficient review. (Ground Three). A hearing held on November 15, 2013 at which Gutierrez, his former counsel, Christopher Shella, Esquire and prosecutor Shawn Evans, testified. (DE 96, Hearing transcript, Nov. 15, 2013).

## II. LEGAL STANDARDS

### A. *Summary Judgment*

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby*, 477 U.S. 242, 247-48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only

if there is sufficient evidence for a reasonable jury to find for the non-moving party). The party seeking summary judgment bears the initial burden of demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate with specific evidence that there exists a genuine issue of material fact requiring trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

Summary judgment is not a vehicle for the court to weigh the evidence and determine the truth of the matter, but to determine whether a genuine issue exists for trial. *Anderson*, 477 U.S. at 249. In making this determination, the court must view the inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 247–48. Accordingly, the court must examine the materiality and the genuineness of the alleged fact issues in ruling on such motion. *Id.* at 248–49.

"A document filed pro se is to be liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Hill v. Braxton*, 277 F.3d 701, 707 (4th Cir. 2002). However,

> [w]hile pro se complaints may 'represent the work of an untutored hand requiring special judicial solicitude,' a district court is not required to recognize 'obscure or extravagant claims defying the most concerted efforts to unravel them' . . . . The 'special judicial solicitude' with which a district court should view such pro se complaints does not transformer the court into an advocate. Only those questions which are squarely presented to a court may properly be addressed.

*Weller v. Dep't of Soc. Services for City of Baltimore*, 901 F.2d 387, 391 (4th Cir. 1990) (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986)).

3

Case 5:11-cr-00149-BR   Document 100   Filed 12/23/13   Page 3 of 15

B. *28 U.S.C. § 2255*

A petitioner seeking relief pursuant to 28 U.S.C. § 2255 must show that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the Court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law." 28 U.S.C. § 2255(a). In such a proceeding, the burden of proof is on the petitioner to establish his claim by a preponderance of the evidence. *See, e.g., Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958) (per curiam) ("Because the proceeding under 28 U.S.C. § 2255 is a civil collateral attack upon the judgment of conviction, the burden of proof is upon petitioner to establish [his claim] by a preponderance of evidence . . . ."); *Toribio-Ascencio v. United States*, Nos. 7:05-CR-00097-FL, 7:08-CV-211-FL, 2010 U.S. Dist. LEXIS 113549, at *5 (E.D.N.C. Oct. 25, 2010) ("In a § 2255 proceeding, the burden of proof is on petitioner to establish his claim by a preponderance of the evidence.").

C. *Ineffective Assistance of Counsel*

Gutierrez asserts his counsel was constitutionally deficient. To state a claim of ineffective assistance of counsel, a petitioner must satisfy a two-pronged test. *Strickland v. Washington*, 466 U.S. 668, 686–87 (1984). First, a petitioner must show that the representation he received fell below an objective standard of reasonableness. *Id.* at 688. This Court must be "highly deferential" of counsel's performance and must make every effort to "eliminate the distorting effects of hindsight." *Id.* at 689. Therefore, the Court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* The second prong is met where there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466

4

U.S. at 694.

## III. ANALYSIS

*A. Statements to the Court*

Gutierrez was arraigned by Magistrate Judge David Daniel on July 6, 2011. (DE 21, 87). Judge Daniel read the one-count indictment charging Gutierrez with conspiracy to distribute in excess of 500 grams of methamphetamine, and asked Gutierrez if he understood the charge, to which Gutierrez responded affirmatively. (DE 87 at 14:23–15:15). Judge Daniel then informed Gutierrez of the penalties he faced:

| | |
|---|---|
| Judge Daniel: | Now, the maximum punishment, statutory punishment you might receive, were you to plead guilty or be found guilty of that felony charge, is as follows: a minimum of 10 years' imprisonment, up to a potential maximum of life imprisonment . . . Do you understand those maximum punishments, Mr. Gutierrez? |
| Gutierrez: | Yes. |

(*Id.* at 15:16–16:3). Judge Daniel then inquired into Gutierrez's decision to plead not guilty with the following exchange:

| | |
|---|---|
| Judge Daniel: | Have you answered all my questions truthfully, Mr. Gutierrez? |
| Gutierrez: | Yes. |
| Judge Daniel: | Would you like any more time to think about your plea or discuss your case or plea with Mr. Shella? |
| Gutierrez: | (No audible reply) |
| Judge Daniel: | If you have any questions, now is the time to talk to Mr. Shella. |
| Gutierrez: | I've already talked with him about everything that I need to talk about. We've talked a bunch already. |
| Judge Daniel: | Okay. So do you want to ask him any more questions before I ask you to enter your plea? |

5

| | | |
|---|---|---|
| Gutierrez: | | No. |
| Judge Daniel: | | Are you prepared to enter a plea, Mr. Gutierrez? |
| Gutierrez: | | I am ready. |

(*Id.* at 16:14–17:16). Judge Daniel then arraigned Gutierrez on the one count charged in the indictment:

| | | |
|---|---|---|
| Judge Daniel: | | Mr. Roberto Pablo Gutierrez, how do you plead to count one, or the one-count indictment against you charging you with conspiracy to distribute and possess with intent to distribute more than 500 grams of a mixture or substance containing a detectable amount of methamphetamine? How do you plead to that one count indictment? |
| Gutierrez: | | I plead innocent. |
| Judge Daniel: | | Do you plead not guilty? |
| Gutierrez: | | Not -- not guilty. |

(*Id.* at 17:17–25).

   *B. Hearing on § 2255 motion*

      *1. Gutierrez's testimony*

At the hearing held on November 15, 2013, Gutierrez testified that he was arrested on April 20, 2011 in Alabama. (*Id.* at 5:13–14). He told officers he was transporting drugs to Raleigh, North Carolina and agreed to cooperate with them. (*Id.* at 5:18–6:4). At the direction of the police, he subsequently delivered the vehicle with the drugs to the intended recipient, Mr. Maldanodo, who was also arrested. (*Id.* at 6:17–7:5). As he could not afford counsel, Shella was appointed to represent Gutierrez. (7:18–8:6).

Gutierrez testified that he first met Shella at the Franklin County Detention Center around May 15 or 16, 2011 for about 40 minutes. (*Id.* at 8:14–21; 8:24–9:1). Gutierrez further

6

testified that Shella informed him he was facing a sentence of 5–40 years and asked him if he wanted to cooperate, to which he responded he did wish to cooperate. (*Id.* at 9:2–6). Gutierrez stated that Shella did not explain the charges, the governments's burnen of proof at trial or his right to a jury trial. (*Id.* at 9:15–25). When asked if he had any involvement with the criminal justice system, Gutierrez responded that he had never been involved with something like this." (*Id.* at 10:4–8).

Gutierrez stated that he next saw Shella on the last day of June at that the meeting lasted 30–40 minutes. (*Id.* at 11:5–17). Gutierrez testified that Shella told him he was facing 10 year to life but that he (Gutierrez) did not ask Shella why the penalty had changed from 5–40 years. (*Id.* at 11:21–12:4). He also stated that he did not know he was transporting methamphetamines because he does not know anything about drugs and that he never used drugs. (*Id.* at 12:10–19). Gutierrez testified that he told Shella that he was transporting the drugs because the Mexican cartel had threatened his life. (*Id.* at 13:5–8). He also stated that he deferred to Shella as to the decision of whether to go to trial. (*Id.* at 13:10–24). He stated further that Shella had not: brought a plea offer from the Government; made him aware that the Government had offered him a plea agreement; informed him that he had the option of entering a plea or going to trial; shown him a plea agreement or read him a plea agreement. (*Id.* at 14:4–13). He further stated that Shella brought no discovery or other documents with him. (*Id.* at 14:14–21).

Gutierrez testified that he next saw Shella on July 6, 2011 at the Federal Courthouse in Greenville, North Carolina. (*Id.* at 18:4–7). Gutierrez stated that he saw Shella before his court appearance and that Shella had him sign a paper. (*Id.* at 18:10–23). Gutierrez entered a not guilty plea. *(Id.* at 19:5–8). Shella then visited Gutierrez on August 19, 2011 for a meeting that lasted

7

15–25 minutes. (*Id.* at 19: 9–10; 19:18–19). Gutierrez stated that the only thing they talked about was the Mexican cartel, how they appeared and how had they threatened him. (*Id.* at 19:24–20:10).

Gutierrez saw Shella next when his trial started on September 6, 2011. (*Id.* at 23:7–15). Gutierrez testified that Shella gave him a folder to review. (*Id.* at 23:21–24:1). He stated that this was the first time he saw any of the evidence in his case. (*Id.* at 25:3–5). Gutierrez also stated that Shella made the decision that he would testify and that they did not discuss the questions that would be asked beforehand. (*Id.* at 25:9–12; 25:21–23).

Gutierrez testified that, after the trial, he received a copy of his PSR, which called for a sentence of 360 months to life. (*Id.* at 26:10–13). Gutierrez testified that Shella told him not to worry because he was going to file an appeal. (*Id.* at 26:25–27:3). Gutierrez was sentenced to 292 months. He stated his belief that he would have faced a sentence of 168–176 months if he had plead guilty. (*Id.* at 27:9–20). He further stated that he would not have gone to trial if he faced a possible sentence of 360 months to life. (*Id.* at 28:4–7).

Gutierrez acknowledged that, when he entered his not guilty plea, there was an interpreter present in the courtroom. (*Id.* at 28:17–19). He further stated that, at the arraignment, he swore to tell the truth, and that he told the judge that he had discussed his plea with his lawyer, that Shella had answered all of his questions regarding the plea, and that he was satisfied with his representation. (*Id.* at 28:20–29:8). Gutierrez testified that, at his arraignment, the judge explained the charges to him and that he told the judge that he answered all the questions truthfully. (*Id.* at 29:17–25). When asked by the judge if he needed more time to discuss the plea or the case with his attorney, Gutierrez stated that he talked with him about everything, and that

8

he did not have any further questions for Shella. (*Id.* at 30:1–14).

Regarding his trial, Gutierrez acknowledged that his trial testimony was that he stopped cooperating with the Government because he was put in a cell with Maldonado. (*Id.* at 31:18–21). After sentencing, Gutierrez wrote a letter to the court stating the Shella had failed him in many ways, but it did not state that Shella failed to tell him about the plea agreement or that he failed to go over discovery with him. (*Id.* at 33:7–34:8).

Gutierrez also testified that he did not learn about the Guidelines and Guideline sentencing until he was in prison and that he determined that a guilty plea would have resulted in a shorter sentence when preparing his § 2255 motion. (*Id.* at 35:13–19; 37:1–2). However, at his arraignment, Judge Daniel stated:

> Gentlemen, the United States Sentencing Commission has established advisory guideline ranges for all federal crimes, but by virtue of the Supreme Court case of United States versus Booker, Chief Judge Flanagan is no longer required to specifically follow those advisory guideline ranges when imposing sentence. She is, however, required to calculate the applicable advisory sentencing guideline range for your offense or offenses. . . . Chief Judge Flanagan is now permitted to impose a sentence which is outside of the advisory sentencing guideline range.

(DE at 87 at 7–8). While he did not remember the statements being made, Gutierrez testified that he had no reason to doubt their accuracy. (*Id.* at 38:3–14). Gutierrez further stated that he first learned of the maximum sentence he faced when he received a copy of the PSR, but conceded that Judge Gates had informed him of the maximum penalty at his initial appearance in April, 2011. (*Id.* at 38:15–23). He then acknowledged that Judge Daniel also informed him of the maximum penalty at his July, 2011 arraignment. (*Id.* at 38:25–39:7). Despite this, Gutierrez then stated that he first learned of the maximum penalty on June 30, 2011 when Shella informed him of it. (*Id.* at 40:9–19). Additionally, Gutierrez was questioned about his testimony that he did not

9

know about drugs and conceded that he knew about marijuana and cocaine because he had used them. (*Id.* at 41:1–9).

    *2. Shella's testimony*

Shella testified that he has appeared in federal court many times and that he was appointed to represent Gutierrez on this case. (*Id.* at 43:21–44:2). He first met with Gutierrez on May 16, 2011 for about an hour. (*Id.* at 57:21–58:1). He stated that he formed an opinion from the beginning that he should enter a guilty plea, as he had already cooperated. (*Id.* at 44:8–14). Shella testified that he related his opinion to Gutierrez, who initially agreed. (*Id.* at 44:15–21). On his second meeting with Gutierrez, Shella stated that he again met with Gutierrez for about an hour. (*Id.* at 58:5–11). Shella testified that he reviewed the discovery and the plea agreement, but that Gutierrez informed him he did not wish to plead guilty, stating that he was forced to carry the drugs. (*Id.* at 44:22–45:10). Shella stated that he advised Gutierrez that he would get less than 10 years if he continued to cooperate, but would receive a much more substantial sentence of he went to trial. (*Id.* at 45:14–18). Shella stated that at this meeting, he had brought a copy of the plea agreement and that he reviewed it word for word with Gutierrez, explaining to him the benefits of pleasing guilty included a lesser sentence, and that if he went to trial, he may be sent to jail for the rest of his life. (*Id.* at 46:2–17).

Shella also stated that he received discovery from the Government on a rolling basis, and that he reviewed all discovery with Gutierrez, with an interpreter present. (*Id.* at 46:24–47:11). Shella stated that, on the date of the arraignment, he spent approximately an hour discussing the case with Gutierrez. (*Id.* at 58:8–23). Shella also denied that he had instructed Gutierrez how to plead at the arraignment. (*Id.* at 48:13–15). They next met on August 19, 2011 for 30 minutes.

10

59:4–10). Shella further stated that, at trial, he provided Gutierrez a binder of the trial exhibits, which he had reviewed with Gutierrez prior to trial on several occasions. (*Id.* at 49:1–18).

Shella testified that he met with Gutierrez prior to sentencing to discuss the PSR and the possible sentence he would receive. (*Id.* at 50:19–51:1). Shella was aware that Gutierrez wanted a new attorney, as Shella received calls from three different attorneys regarding the case. (*Id.* at 51:19–24). On the day of sentencing, Gutierrez directly informed Shella that he wanted different counsel because he was unhappy with the result of the trial or his expected sentence. (*Id.* at 52:9–18). Shella further testified that he objected to the PSR as to the enhancement stemming from Gutierrez testifying, which Judge Britt sustained and which resulted in a reduction in the sentence. (*Id.* at 52:19–24). Shella also stated that he was sentenced at the low end of the Guidelines. Following sentencing, Shella filed a notice of appeal on behalf of Gutierrez. (*Id.* at 53:3–5).

Shella testified that in his 17 years of experience as an attorney, including 14 years as a federal defense attorney, he had never had a client initially cooperate and then decide to go to trial because it made no sense. (*Id.* at 63:6–13). He testified that he told Gutierrez that the decision to go to trial was a bad idea and that he tried to talk him out of it. (*Id.* at 69:24–70:3).

### 3. Evans' testimony

Mr. Shawn Evans, a Special Assistant United States Attorney, also testified at the hearing. Evans stated that Gutierrez was given a written plea offer, which he sent to Shella. (*Id.* at 90:2–21). The plea agreement required Gutierrez to cooperate with the Government, including testifying fully and truthfully if requested. (*Id.* at 91:6–15). He further stated that the discovery and plea agreement were sent to the defense in the middle of June, 2011. (*Id.* at 92:13–17). If

11

Gutierrez continued his cooperation with the Government, Evans expected him to be debriefed by agents, talk about the source of the supply of drugs and to testify at trial if he were called upon to do so. (*Id.* at 94:8–20).

*B. Ground One*

Gutierrez contends first that counsel as ineffective because he took the case to trial when Gutierrez desired to enter a guilty plea and had, in fact, already confessed and offered cooperation. However, Gutierrez's testimony at the evidentiary hearing is contradicted by the testimony of Shella.

Gutierrez stated that Shella made the decision to go to trial despite the fact that he wanted to continue to cooperate. Gutierrez also stated that he deferred the decision of whether to go to trial to Mr. Shella. Moreover, despite testifying that he had no knowledge of drugs, he subsequently acknowledged he had used drugs in the past. He also testified that he was unaware of the Guidelines until he reviewed his PSR, but he conceded that he was informed of the application of the Sentencing Guidelines at both his initial appearance and his arraignment. Additionally, Gutierrez testified that he learned of the potential sentence when Shella met with him in June, but later stated that he had been informed of the potential sentence at his initial appearance in April. Further, at his arraignment, he testified, under oath, that he had sufficient time to discuss his case with his attorney, that he had did not have any more questions for Shella and that he was satisfied with his representation. When read the charge against him, Gutierrez stated that he was not guilty.

Mr. Shella testified that: he met with Gutierrez on several occasions and they discussed

12

the evidence and the case. Despite initially agreeing to cooperate and enter a guilty plea, Gutierrez decided to go to trial, a move that Mr. Shella found surprising and ill-advised. With his extensive background in criminal law, Mr. Shella found that the evidence against Gutierrez, including his admissions to the police and his participation in a controlled delivery, offered little chance of success at trial. Although he tried to talk Gutierrez out of his decision to go to trial, Mr. Shella was unsuccessful and thus heeded Gutierrez's wishes and the case proceeded to trial.

Having heard the testimony and having the opportunity to observe the witnesses, the undersigned makes the following determinations. Gutierrez's testimony was totally and utterly unbelievable. Simply stated, his testimony, which is set forth in detail above, is that Mr. Shella told him nothing of substance, showed him no documents, did not transmit the plea offer to him, made the decision to go to trial for him and made no prediction of his anticipated sentence. In short, Gutierrez's testimony on these points, which are salient to a determination of the issues before the court, is not entitled to any credibility. In contrast, Mr. Shella's testimony was straightforward and believable. He advised Gutierrez to plead guilty. Given the evidence against him, he was unlikely to be successful at trial, and a conviction would result in a longer sentence. The undersigned finds this testimony credible and resolves all conflicts between his testimony and that of Gutierrez in Mr. Shella's favor.

For these reasons, Gutierrez has failed to establish an ineffective assistance of counsel claim against Mr. Shella as to the decision to plead not guilty and take the matter to trial. Consequently, Gutierrez is not entitled to relief on Ground One.

*C. Ground Three*

Gutierrez also alleges that counsel was ineffective because he did not provide discovery to him until the first day of trial, leaving Gutierrez little or no time to review in preparing his defense. Mr. Shella testified that he reviewed the discovery with Gutierrez when they met in June. This is consistent with the testimony of Mr. Evans testified, who stated that he provided the bulk of discovery to Mr. Shella in mid-June. Mr. Shella testified further that he again reviewed discovery with Gutierrez at the arraignment in July, 2011 and again in August, 2011, in preparation for trial. An interpreter was present for these meetings. Thus, Gutierrez's statements contradict those of Mr. Shella. Further, Mr. Stella stated that, on the first day of trial, he gave Gutierrez a trial notebook of all of the discovery, but that they had reviewed all of the discovery contained therein in their previous meetings. (DE 89-2, ¶ 11). As noted above, the Court finds that Gutierrez is not credible. Accordingly, his argument that he was not presented with discovery until the day of trial lacks merit. Moreover, even if his claims were credible, Gutierrez has not disputed the accuracy of the discovery evidence or indicated how the outcome of his case would be different had he had access to that material at an earlier time. He is thus unable to satisfy his burden to establish an ineffective assistance of counsel claim on this issue. Consequently, it is recommended that the motion be denied on Ground Three.

## IV. CONCLUSION

For the foregoing reasons, the undersigned RECOMMENDS that the motion to vacate (DE 66) be DENIED.

SO RECOMMENDED in Chambers at Raleigh, North Carolina on December 23, 2013.

_____
WILLIAM A. WEBB
UNITED STATES MAGISTRATE JUDGE