IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:11-CR-149-1-BR

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| v. | ) | ORDER |
| | ) | |
| ROBERTO PABLO GUTIERREZ | ) | |

This matter is before the court on defendant's motions for compassionate release and for a hearing by video or teleconference. (DE ## 128, 151.)

## I. BACKGROUND

In 2011, defendant was convicted by a jury of conspiracy to distribute and possess with the intent to distribute 500 grams or more of a mixture containing a detectable amount of methamphetamine ("meth"). The court sentenced defendant to 292 months imprisonment and five years supervised release, the bottom of the sentencing guidelines range. On appeal, the Fourth Circuit Court of Appeals affirmed his conviction and sentence. In 2016, based on retroactive amendments to the sentencing guidelines, the court reduced defendant's sentence of imprisonment to 235 months.

In January 2020, defendant filed *pro se* a motion for compassionate release. Pursuant to Standing Order, the court appointed counsel to represent him for purposes of the motion and permitted the filing of a supplemental brief and additional supporting documents. (DE # 129.) Appointed counsel filed a memorandum in support of defendant's motion, (DE # 137), to which the government filed a response in opposition, (DE # 144). Defendant filed a reply. (DE # 145.) With leave, the government filed a sur-reply. (DE # 149-2.)

Most recently, defendant filed the instant motion for a hearing by video or telephone conference. The motion represents that the government opposes this request. Last week, defendant notified the court that he had tested positive for COVID-19, submitted medical records confirming that diagnosis, and requested that the court grant his motion for compassionate release. (DE # 152.) The government filed a response, indicating that it continues to oppose defendant's motion and arguing he should not be released because of the risk of transmitting COVID-19 to others. (DE # 155.)

Although the court initially indicated it intended to hold an evidentiary hearing on defendant's motion for compassionate release, (see DE # 148), it decides to act expeditiously and without a hearing.

## II. DISCUSSION

Defendant seeks compassionate release (i.e., a reduction in his sentence of imprisonment to time served) pursuant to 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018 ("First Step Act").[1] That statute provides in relevant part:

> The court may not modify a term of imprisonment once it has been imposed except that—
> (1) in any case—
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . , after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
> (i) extraordinary and compelling reasons warrant such a reduction . . .

---
[1] The First Step Act amended § 3582(c)(1)(A) to permit a defendant to bring a motion for compassionate release. See Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239 (2018).

2

and that such a reduction is consistent with applicable
policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c).

The parties agree that United States Sentencing Guideline § 1B1.13, "Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement)," and its commentary guide the court's consideration.[2] (See DE # 137, at 2; DE # 144, at 3-4.) "Th[at] policy statement . . . requires: (1) extraordinary or compelling reasons to warrant a reduction in a defendant's sentence, (2) that the defendant is not a danger to the safety of others or the community, and (3) that release from custody complies with § 3553(a) factors." United States v. Lake, No. CR 5:16-076-DCR, 2019 WL 4143293, at *2 (E.D. Ky. Aug. 30, 2019) (citing U.S.S.G. § 1B1.13 (2018)).

Under the policy statement, extraordinary and compelling reasons justifying a sentence reduction exist based on any of following circumstances:

> (A) <u>Medical Condition of the Defendant</u>.—
> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
> (ii) The defendant is—
> (I) suffering from a serious physical or medical condition,
> (II) suffering from a serious functional or cognitive impairment, or
> (III) experiencing deteriorating physical or mental health because of the aging process,
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

---

[2] Technically speaking, the policy statement, which was adopted prior to the First Step Act, applies only to motions for compassionate release filed by the BOP. See United States v. Beck, No. 1:13-CR-186-6, 2019 WL 2716505, at *5 (M.D.N.C. June 28, 2019). "The Sentencing Commission has not amended or updated the old policy statement since the First Step Act was enacted, nor has it adopted a new policy statement applicable to motions filed by defendants. While the old policy statement provides helpful guidance, it does not constrain the Court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)(i)." Id. at *6-7 (citation and footnote omitted).

> (B)     <u>Age of the Defendant</u>.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
> (C)     <u>Family Circumstances</u>.
>     (i)     The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>     (ii)     The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
> (D)     <u>Other Reasons</u>.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B.13, cmt. n.1.

Before considering the merits of the motion, it appears defendant fully exhausted his administrative appeal rights in the Bureau of Prisons ("BOP") prior to filing the motion. In May 2019, defendant submitted a request for a reduction in sentence to the warden based on various medical conditions, along with a proposed release plan. (DE # 128, at 2; DE # 128-1.) The warden denied the request, and defendant sought reconsideration and appealed, all without success.[3] (See DE # 128-2.) The government does not dispute that these actions satisfy § 3582(c)(1)(A)'s exhaustion requirement.

Turning to the merits of the motion for compassionate release, defendant contends his numerous health conditions combined with the lengthy sentence of imprisonment he received constitute an extraordinary and compelling reason for compassionate release. (DE # 137, at 4-5.) Also, defendant argues that his motion is bolstered by the fact that he has tested positive for COVID-19 and his medical conditions place him at a higher risk for complications from COVID-19. (DE # 145, at 2; DE # 152, at 1.) The government faults defendant for not offering

---

[3] At the time of defendant's request to the warden, defendant had been diagnosed with chronic myeloid leukemia. (See DE # 128-1; DE # 138, at 17.) While he was exhausting his administrative appeal rights in the BOP, the leukemia went into remission. (See DE # 138, at 17.) Defendant was still in remission when he filed his motion for compassionate release in this court. (See id.) The leukemia recurred in March. (See DE # 146, at 1.)

a medical opinion about his health conditions and argues that those conditions, even coupled with defendant's recent COVID-19 diagnosis, are not serious enough to reason justify relief because he is being treated on an outpatient basis, rather than being housed at a federal medical center, and he does not require assistance with self-care. (See DE # 144, at 6-7 & 8 n.1; DE # 149-2, at 4; DE # 155, at 1.) Additionally, the government argues the § 3553(a) factors counsel against defendant's release. (See DE # 144, at 10-11 (noting that defendant was part of a drug trafficking conspiracy and "firearms and violence are necessary integral tools of the drug trade"); DE # 155, at 1-2 (recognizing that defendant, "a potential transmitter of COVID-19[, risks] infecting anyone he comes into contact with").)

The court concludes defendant has shown his medical conditions combined with other reasons are extraordinary and compelling to warrant a sentence reduction, consistent with U.S.S.G. § 1B1.13 and considering the applicable § 3553(a) factors. Defendant is 45 years old, and he has chronic myeloid leukemia (treated with a chemotherapy drug), type II diabetes, hyperlipidemia, morbid obesity, anemia, hypertension, sleep related bruxism, and polyneuropathy. (DE # 138, at 16-17; DE # 146, at 1.) His medical records substantiate his claim that he suffers from chronic pain. (See DE # 128, at 5; DE # 138, at 4; DE # 146, at 4.) While some of defendant's conditions appear to be well-managed, the BOP classifies his medical care as level 3, (see DE # 137-1, at 3), which encompasses inmates who "are fragile outpatients who require frequent clinical contacts, and/or who may require some assistance with activities of daily living, but do not require daily nursing supervision," (DE # 128-7). Particularly significant are chemotherapy, diabetes, and obesity, which make defendant vulnerable to severe illness from COVID-19. See Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/

2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited Apr. 29, 2020). Although defendant is now positive for COVID-19 and, as of last week, not suffering severe illness as result, defendant is not necessarily immune from contracting it again. See id., https://www.cdc.gov/coronavirus/2019-ncov/faq.html#Coronavirus-Disease-2019-Basics (follow "Symptoms & Testing" hyperlink, then follow "If I have recovered from COVID-19, will I be immune to it" hyperlink) (last visited Apr. 29, 2020) ("At this time, we are not sure if you can become re-infected. Until we know more, continue to take steps to protect yourself and others.").

Defendant was sentenced to, and has already served, a lengthy sentence of imprisonment. Because he had no criminal history points, defendant's guideline range was driven by the quantity of meth involved. (See DE # 46, ¶¶ 10, 25.) The offense was non-violent, and no weapons were found on defendant or in his vehicle at the time of his arrest. (See id. ¶¶ 4-6.) Defendant has served nine years in prison, which is half of his reduced sentence and more than the statutory mandatory minimum term, with good time credit. While incarcerated, he has not incurred a single infraction, (DE # 128, at 6; see also DE # 137-1, at 2), and his security level is minimum, (DE # 137-1, at 1). Given defendant's lack of criminal history, conduct while incarcerated, and chronic health conditions, it is unlikely he will reoffend. Upon his release, he plans to return to his home in Texas to live with his wife. He is not a danger to the safety of others or the community (once the BOP deems him no longer contagious, as discussed below). Under the circumstances, reducing defendant's sentence of imprisonment to time served reflects the seriousness of his offense, promotes respect for the law, and provides just punishment.

Like the government, the court is concerned about releasing defendant while he is positive for COVID-19, particularly because he is currently isolated and would need to travel from North Carolina to Texas. The BOP medical professionals are in the best position to

determine when defendant is no longer contagious and can safely be released in the community. The court presumes the BOP will act consistently with the directives of the Centers for Disease Control and Prevention in this regard. See Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/if-you-are-sick/steps-when-sick.html (last visited Apr. 29, 2020) (stating that those who are recovering from COVID-19 in an isolated, non-hospital setting can leave isolation if testing determines that they are no longer contagious and if they no longer have a fever and other symptoms have improved). Accordingly, the court will allow the BOP to delay defendant's release for an appropriate amount of time.

### III. CONCLUSION

Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), defendant's motion for compassionate release is GRANTED. Defendant's motion for a hearing is DENIED. Defendant's sentence of imprisonment as reflected in the order dated 26 May 2016 is REDUCED to time served. All other provisions of the judgment imposed 3 January 2012 shall remain in effect. The BOP is permitted to delay defendant's compassionate release until a medical professional determines he is no longer contagious.

This 30 April 2020.

_____
W. Earl Britt
Senior U.S. District Judge